**Lafayette A. WOOD, Jr., Plaintiff,**

v.

**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, and BellSouth Corporation, Defendants.**

**No. 1:87–CV–2146–RHH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 5, 1989.

Barry Lewis Zimmerman, Atlanta, Ga., for plaintiff.

Vincent Louis Sgrosso, Atlanta, Ga., for BellSouth Corp.

Gregory D. Artis, Keith W. Kochler, Atlanta, Ga., for Southern Bell Tel. & Tel. Co.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff brings this action pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, as amended (the "ADEA"). Plaintiff claims that he was demoted from his position at Southern Bell and that individuals, both younger and less experienced than plaintiff, took his position. Complaint, ¶¶ 12, 14, 15, 17 and 19. Currently before the court is defendant BellSouth's motion to dismiss, which this court has converted into a motion for summary judgment. Also before the court is BellSouth's and Southern Bell's joint motion for summary judgment on the merits. For the reasons stated in full below, the court GRANTS defendant BellSouth's motion for summary judgment and DISMISSES BellSouth from this action. The court DENIES Southern Bell's motion for summary judgment on the merits of the case.

FACTS

Plaintiff, Lafayette A. Wood, began his career at Southern Bell in 1956 as a Junior

Accountant. Complaint ¶ 9. Plaintiff was promoted to an Accountant on October 1, 1958. *Id.* On December 1, 1961, plaintiff became an Internal Auditor. Then, on February 1, 1963, plaintiff was promoted to an Independent Company Relations Representative. *Id.* On November 15, 1964, plaintiff became a Public Relations Manager. He was promoted to a District Manager on October 15, 1968. *Id.*

Plaintiff became General Public Relations Manager on April 1, 1970. General Public Relations Manager is a Pay Grade ("PG") 7 level management position. On October 1, 1973, plaintiff became Administrative Assistant—Public Affairs. On August 1, 1976, he became General Commercial and Marketing Supervisor. Next, on January 1, 1977, plaintiff's job title became Division Commercial Manager. On December 1, 1980, plaintiff became Division Manager—West. On April 1, 1982, his title became Division Manager—Sub. Plaintiff was then demoted on October 1, 1985 to Operations manager—Customer Service, a PG 6 level position. Thus, for fifteen years prior to his demotion, plaintiff was a PG 7 level manager for Southern Bell.

Plaintiff alleges he was demoted due to Southern Bell's discriminatory implementation of a four-tier management structure beginning in 1983. Southern Bell's reasons for switching from a five-tier management structure to a four-tier structure are best understood in light of the overall corporate realignment that occurred following the disassembling of AT & T.

As the monolithic AT & T corporate structure was disassembled in 1982, regional holding companies began to establish and operate the local telephone companies which were formerly the wholly owned subsidiaries of AT & T. Under the regional holding company format, Southern Bell, formerly a wholly owned subsidiary of AT & T, became a wholly owned subsidiary of the regional holding company later known as BellSouth.

Prior to divestiture, Southern Bell utilized a five-tier management structure. After divestiture from AT & T, Southern Bell began to employ a four-tier rather than a five-tier management system. The switch was allegedly made to "meet the new competitive challenges to be realized following divestiture." *See* Affidavit of William R. Delk, Vice President—Corporate Affairs, BellSouth Enterprises, Inc.

As a result of the reduction in the number of management levels, Southern Bell allegedly could not retain every manager in the management level he or she held prior to the restructuring. *Id.* Managers whose positions were to be eliminated under the restructuring were identified at "managers available for reassignment." Southern Bell claims that such managers then became available for selection to other equivalent level management positions. *Id.* Southern Bell admits, however, that ultimately some managers could not be reassigned to an equivalent level management position, and had to be demoted in grade. *Id.*

Plaintiff's position as Division Manager was identified as non-essential and eliminated under the restructuring. Plaintiff was accordingly identified as a "manager available for reassignment." On October 1, 1985, plaintiff was notified that since the company's efforts to find him an equivalent position were unsuccessful, he was to be demoted.

Plaintiff asserts that defendants found equivalent positions for the younger "managers available for reassignment," and that their failure to do the same for him constitutes age discrimination.

On October 9, 1985, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff then filed his complaint in this action on September 27, 1987.

## DISCUSSION

### I. *Standard of Review*

This action is currently before the court on defendants' motions for summary judgment. This court will grant summary judgment when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate that the nonmoving party

lacks evidence to support an essential element of his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant's burden is "discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Once the movant has met this burden, the opposing party must present evidence establishing a material issue of fact. *Id.* The nonmoving party must go "beyond the pleadings" and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

While all evidence and factual inferences should be viewed in a light most favorable to the nonmoving party, *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987), *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in the original). An issue is not genuine if unsupported by evidence or created by evidence that is "merely colorable" or "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element essential to his or her case so as to create a *genuine* issue for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552, *Rollins*, 833 F.2d at 1528.

As a preliminary matter the court must consider defendant BellSouth's motion to dismiss, which the court has converted into a motion for summary judgment. After considering BellSouth's converted motion to dismiss, the court will determine whether plaintiff's age discrimination claims can withstand defendants' motion for summary judgment.

## II. *BellSouth's Motion to Dismiss/Motion for Summary Judgement*

■ BellSouth filed a Motion to Dismiss BellSouth from the instant case pursuant to Fed.R.Civ.P. 12(b)(6) on May 11, 1988. The court converted this Rule 12(b)(6) motion to dismiss into a motion for summary judgment since defendant had attached two affidavits in support of its motion. The court now considers the motion to dismiss converted into the motion for summary judgment.

BellSouth seeks to be dismissed from this action because it claims that it is not plaintiff Wood's employer within the meaning of the ADEA. It is undisputed that BellSouth is the parent corporation of Southern Bell. It is also undisputed that Southern Bell is plaintiff's employer. Plaintiff maintains that BellSouth, as the parent company of Southern Bell, is also plaintiff's employer within the meaning of the ADEA because BellSouth exerts considerable control over Southern Bell's management and personnel policies.

The ADEA describes an employer as a:

person engaged in industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ... the term also means (1) any agent of such person....

29 U.S.C. § 630(b).

As a general rule, a parent company will be considered a separate corporate entity from its wholly owned subsidiary. *Baker v. Raymond International, Inc.*, 656 F.2d 173 (5th Cir., Unit A, 1981). However, where a parent company exercises such control over a subsidiary that the two corporations are essentially the same entity, a parent corporation will be considered the employer of its subsidiary's personnel. *See Woodford v. Kinney Shoe Corp.*, 369 F.Supp. 911 (N.D.Ga.1973) (Smith, C.J.).

Courts have formulated several tests to determine whether a parent company's control over a subsidiary is such that the parent should be held liable for the subsidi-

ary's discriminatory treatment of its employees. The four tests, discussed in detail below, are (1) the "integrated enterprise" test, (2) the "agency" test, (3) the "alter ego" test, and (4) the "mere instrumentality" test.

### A. The "Integrated Enterprise" Test

The "integrated enterprise" test had its genesis in labor law. The National Labor Relations Board ("NLRB") first applied this four test part test to determine whether a consolidation of separate corporate entities was warranted. The quadripartite test entails proof of the following:

(1) an interrelation of operations

(2) common management

(3) centralized control of labor relations, and

(4) common ownership or financial control.

*See Radio & Television Broadcast Technicians, Local Union 1264, International Brotherhood of Electrical Workers, AFL–CIO v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965).

The "integrated enterprise" test was soon applied to Title VII litigation to determine whether an active parent corporation, supervising and controlling the operations of its subsidiary, would be considered the "employer" of the subsidiary's personnel for purposes of the Act. *See, e.g., Williams v. New Orleans Steamship Association,* 341 F.Supp. 613, 615 (E.D.La. 1972), *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389 (8th Cir.1977). This "integrated enterprise" test is "well suited" to Title VII cases because it allows courts to read the term "employer" in a manner consistent with the purposes of the Act. *See Carter v. Shop Rite Foods, Inc.,* 470 F.Supp. 1150, 1160 (N.D.Tex.1979). The test is similarly applicable to ADEA cases. *Oscar Mayer & Company v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979) (holding that interpretation of the ADEA should follow Title VII construction, given the common language and purposes of the two acts), *see also*

*Berkowitz v. Allied Stores of Penn–Ohio Inc.,* 541 F.Supp. 1209 (E.D.Pa.1982).

By applying the four prongs of the "integrated enterprise" test to demonstrate a joint enterprise of the parent and subsidiary, the plaintiff can demonstrate that a parent company should be liable for its subsidiary's actions. *See Nation v. Winn–Dixie Stores, Inc.,* 567 F.Supp. 997, 1010 (N.D.Ga.1983) (Evans, J.), *Greason v. Southeastern Railroad Associated Bureaus,* 650 F.Supp. 1, 4 (N.D.Ga.1986) (Ward, J.), *EEOC v. Upjohn Corp.,* 445 F.Supp. 635 (N.D.Ga.1977) (Murphy, J.).

### B. The "Agency" Test

Courts which have applied the "integrated enterprise" test frequently undertake an additional inquiry to determine whether the subsidiary can be considered a mere agent of the parent corporation. This "agency" test stems from the definition of "employer" as laid out in 29 U.S.C. § 630(b). Under Section 630(b), an agent of a corporate employer is also considered an employer. *See Nation,* 567 F.Supp. at 997, *Greason,* 650 F.Supp. at 1. Thus, where a subsidiary is deemed to act as the parent company's agent, both the subsidiary and the parent will be deemed the employer of the subsidiary's personnel for the purposes of the ADEA.

### C. The "Alter Ego" Test

Under the third test, the "alter ego" test, the court examines whether the subsidiary corporation is a separate entity from the parent corporation, or merely the parent's "alter ego." If the court finds that a subsidiary is simply the parent's "alter ego," the court may disregard the parent company's separate existence to prevent fraud or injustice. *See, e.g., Publicker Industries, Inc. v. Roman Ceramics Corp.,* 603 F.2d 1065 (3d Cir.1979).

### D. The "Mere Instrumentality" Test

The fourth test, the "mere instrumentality" test, is closely related to the "alter ego" test. Under the "mere instrumentality" test, the court may hold a parent company liable for its subsidiary's actions if

the subsidiary is merely an instrument for the parent's wrongdoing. In such a case, the court is free to disregard the parent's separate existence and "pierce the corporate veil" to prevent unjust loss or injury to the plaintiff. *See, e.g., Fanfan v. Berwind Corp.*, 362 F.Supp. 793, 795 (E.D.Pa. 1973).

Neither the second test ("alter ego") nor the third test ("mere instrumentality") is applicable in the case at hand, since the allegations concern age discrimination rather than fraud or tortious conduct. However, these tests are instructive because, like the "integrated enterprise" test, they help the court examine the degree of interrelation between the parent and the subsidiary. And, whatever analytical framework the court employs, the outcome is likely to be the same: Where the court deems the subsidiary a mere extension of the parent, the court may freely disregard the parent's autonomous existence.

### E. The Relationship Between Southern Bell And BellSouth

Plaintiff has submitted much material in his attempt to demonstrate that BellSouth essentially operated a joint enterprise with Southern Bell. The standard imposed on plaintiff at this point is high; plaintiff must demonstrate that BellSouth and Southern Bell are so functionally intertwined that the two companies are, in effect, one employer. The mere existence of a parent-subsidiary relationship is not enough to impose liability on the parent. *Greason*, 650 F.Supp. at 4.

Plaintiff introduces evidence that BellSouth formulated and implemented the staffing plan of its subsidiary, Southern Bell. Specifically, plaintiff maintains the Southern Bell's four-tier employment structure was approved by BellSouth and implemented by Southern Bell under BellSouth's direction. Plaintiff also points to joint fundraising activities between Southern Bell and BellSouth as evidence of an integrated enterprise. And plaintiff argues

that the lateral transfers of Southern Bell employees to BellSouth is an additional indication of a joint personnel structure and operation. Finally, plaintiff states that Southern Bell employees are given BellSouth "Key Manager" notebooks.[1]

BellSouth has submitted the affidavit of Patricia Donald, the Assistant Vice–President of Human Resources and Planning and Development, to rebut each of plaintiff's allegations concerning the existence of a joint enterprise. For example, Ms. Donald states the BellSouth controls neither the hiring, firing or promotion of Southern Bell employees. Further, Ms. Donald states that lateral transfers between Southern Bell and BellSouth are intercompany rather than intracompany transfers. *See also* Affidavit of Virginia Reynolds, ¶ 15.

The court finds that although BellSouth promulgates various practices and procedures and tenders them to Southern Bell, Southern Bell has discretion concerning whether to use them. Rather than being a mere extension of its parent corporation, Southern Bell implements plans suggested by BellSouth in accordance with Southern Bell's independent needs. As the sole shareholder in Southern Bell, BellSouth can be expected to establish certain guidelines and general policies for Southern Bell to follow. However, the existence of such policies does not constitute proof of an integrated enterprise.

Ownership of a controlling interest in a given corporation enables the owner to exercise control of the normal incidents of stock ownership, such as the right to choose directions and set general policies, without forfeiting the protection of limited liability. *Baker*, 656 F.2d at 180. BellSouth's involvement with Southern Bell falls squarely within the limits of a parent company's legitimate involvement, not jeopardizing the separate corporate structure of its subsidiary.

---

**1.** Key Managers of Southern Bell are PG 7 or PG 8 level employees. As Key Managers of Southern Bell, these employees are given a BellSouth Key Manager notebooks and become eligible for BellSouth Key Manager benefits. Plaintiff maintains that this benefit and incentive plan shows a centralized control of labor relations.

Plaintiff presents no evidence of the parent company's domination of or complete integration with the subsidiary, such as commingled funds or assets, joint bookkeeping, joint shareholder or board meetings, the use of the same work force or business offices or the severe under-capitalization of the subsidiary. *See Johnson v. Flowers Industries, Inc.*, 814 F.2d 978 (4th Cir.1987). Plaintiff simply fails to meet his burden of proof on the joint enterprise issue. Plaintiff also fails to present any evidence evincing an agency relationship between BellSouth and Southern Bell. Accordingly, the court GRANTS BellSouth's motion for summary judgement and DISMISSES it from this action.

### III. *Motion for Summary Judgment*

Southern Bell, the remaining defendant in this action, moves for summary judgment on two grounds. First, Southern Bell claims that virtually all the alleged acts of discriminatory conduct occurred outside the 180 period preceding plaintiff's filing of a charge of discrimination with the Equal Employment Opportunity Commission, ("EEOC"); thus, defendant argues that plaintiff failed to demonstrate the existence of a "present violation." Second, defendant claims that plaintiff cannot establish a prima facie case of discrimination as to those acts that did occur within the 180 day period, or that even if plaintiff can establish a prima facie case, defendant has presented legitimate non-discriminatory reasons for its action which entitle it to summary judgement on the merits. The court considers each of these arguments in turn.

### A. The 180 Day Rule

■ Defendant applies 29 U.S.C. § 626(d)(1) to the facts of this case in a rather convoluted manner to suggest that plaintiff has not established a "present violation" of the ADEA.

In pertinent part, 29 U.S.C. § 626(d)(1) provides:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimi-

nation has been filed with the Equal Employment Opportunity Commission. Such charge shall be filed—

(1) within 180 days after the alleged unlawful employment practice occurred;

Plaintiff alleges that defendant unlawfully demoted him on October 1, 1985. Plaintiff then filed a charge with the EEOC on October 9, 1985. Clearly, the alleged discriminatory demotion occurred within 180 days preceding October 9, 1985.

Defendant seems to argue, however, that *both* plaintiff's demotion *and* the evidence that plaintiff was replaced by younger employees had to fall within the 180 day period to satisfy the requirements of 29 U.S.C. § 626(d)(1). Defendant contends that:

in order to provide the basis for a timely charge, Plaintiff must establish that discriminatory lateral transfers (which would have preserved his PG 7 level status) or promotions (which would have restored his PG 7 level status) for which he was both qualified and eligible occurred within the 180 day period that preceded his charge.

Defendants' Memorandum in Support of Their Motion for Summary Judgement, p. 18. Defendant maintains that allegations of discriminatory lateral transfers or promotions occurring before or after the 180 day time frame do not satisfy 29 U.S.C. § 6269(d)(1) requirement. However, defendant readily admits that plaintiff filed his complaint with the EEOC just eight days after he received official and unequivocal notice of his demotion.

Defendant misconstrues 29 U.S.C. § 626(d)(1) by arguing that both the alleged discriminatory act (the demotion) and all proof of the discrimination (filling of plaintiff's position with younger employees) had to occur within the 180 day period to satisfy the "present violation" requirement. Defendant's interpretation of the section essentially transfers the 180 day filing requirement into a limitation on the time in which to garner evidence of discrimination. The basic purpose of the filing requirement of section 626(d)(1) "is to provide the (EEOC) with sufficient information so that

it may notify prospective defendants and to provide the (EEOC) with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation." HR Conf.Rep. No. 950, 95th Cong., 2d Sess., reprinted in (1978) U.S.Code Cong. Admin.News 504, 528, 534. The 180 rule is not intended to circumscribe plaintiff's amassing of evidence.

Under defendant's reading of the 180 day requirement, an employer could always avoid liability under the ADEA by simply firing or demoting an employee on a given day and hiring or promoting a younger replacement at least 181 days before or after the firing or demotion. Defendant's hyper-technical reading of the 180 day rule does not comport with the quintessentially remedial purpose of the ADEA.

Accordingly, this court finds that the plaintiff satisfied the requirements of 29 U.S.C. § 626(d)(1) by filing his EEOC complaint on October 9, 1985, just eight days after his demotion, and well within the 180 window. The court also finds that plaintiff, in proving his discrimination claim, is not confined to those alleged discriminatory transfers or promotions of younger employees which took place within the 180 day period preceding the filing of plaintiff's claim.[2]

**B. Plaintiff's Age Discrimination Claim**

Plaintiff claims that he was demoted due to defendant's discriminatory implementation of a "Four–Tier Management Plan." Complaint ¶ 14. He contends that the implementation of the management plan was discriminatory in that plaintiff and other Pay Grade 7 employees who were as old or older than plaintiff were all either demoted or forced to retire. The younger pay Grade 7 employees, on the other hand, al-

legedly either retained their jobs at PG 7 levels or were reassigned to positions enabling them to keep their PG 7 status. *Id.*

Under the ADEA, a plaintiff asserting discriminatory treatment bears the ultimate burden of proving that age was a determining factor in the employer's decision to fire him or her. *Young v. General Foods Corp.,* 840 F.2d 825, 828 (11th Cir. 1988), *Anderson v. Savage Laboratories, Inc.,* 675 F.2d 1221, 1224 (11th Cir.1982). As in other cases of employment discrimination, an action under the ADEA is a three-step process. First, the plaintiff must establish a prima facie case. *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1443 (11th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). Second, the defendant has burden the proving that a legitimate, nondiscriminatory reason controlled its decision to demote the plaintiff. Upon such a showing by defendant, the burden shifts back to the plaintiff to carry the ultimate burden of proving that he was the victim of intentional age discrimination and that the reasons advanced by the defendant were pretextual. *See, e.g., Archambault v. United Computing Systems, Inc.,* 786 F.2d 1507, 1512 (11th Cir.1986).

**1. *The Prima Facie Case***

■ At the first stage, a plaintiff can establish discrimination through one of three commonly accepted means: By direct evidence of discriminatory intent; by meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or through statistical proof. Here plaintiff makes no showing of direct evidence of discriminatory intent. Nor does plaintiff put forward statistical proof of a pattern of discrimination.[3] Thus

---

**2.** A plaintiff can establish a prima facie case of discrimination by demonstrating that he or she is in a protected group, that adverse employment action was taken against him or her, that he or she was replaced by someone younger *or that the position remained open* and that he or she was qualified for the position for which he or she was rejected. *Carter v. City of Miami,* 870 F.2d 578 (11th Cir.1989). Obviously, if the position remains open past the 180 day period, but then is filled by a younger employee shortly

thereafter, the plaintiff will not be precluded from introducing such evidence to support his or her claim.

**3.** Plaintiff does, however, use statistics for the purpose of demonstrating that defendant's method of ranking its employees was a mere pretext for age discrimination. Thus, plaintiff's statistical proof becomes important at the third step of the case.

**1252**

the court is only concerned with the *McDonnell Douglas* elements.

### a) McDonnell Douglas

The Court of Appeals for the Eleventh Circuit has adopted a variation of the quadripartite test set out for Title VII claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this formulation, a plaintiff can establish a prima facie case under the ADEA with circumstantial evidence by proving: (1) that she or he is a member of the protected group [4]; (2) that adverse employment action was taken against her or him; (3) that she or he was replaced by a person outside the protected group; and (4) that she or he was qualified for the position for which she or he was rejected. *Carter v. City of Miami*, 870 F.2d 578 (11th Cir. 1989), *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 (11th Cir.1988).

The Eleventh Circuit has repeatedly eschewed an overly strict formulation of the four elements of the prima facie case. *Carter*, 870 F.2d at 583. Unlike race or sex, age is not a "discreet and immutable characteristic of an employee which separates the members of the protected class indelibly from members outside the protected class. Rather, age is a continuum along which the distinctions between employees are often subtle and relative ones." *Goldstein v. Manhattan Industries, Inc.*, 758 F.2d 1435, 1442 (11th Cir.), *cert. denied* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). The inquiry should be whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted. *Id.* at 1443. We turn now to the facts of the case at hand to consider whether plaintiff has established a prima facie case of age discrimination.

Plaintiff Wood was fifty-three years old on the day he was notified of his demotion. Thus, he clearly falls within the protected group for the purposes of the ADEA. Mr. Wood was demoted on October 9, 1985; thus, he satisfies the second *McDonnell Douglas* prong since an adverse employment action was taken against him.

To satisfy the third and fourth prongs of the test, Mr. Wood asserts that he was replaced by individuals outside the protected group, as well as younger individuals in the protected group.[5] Certainly, the evidence presented by plaintiff indicates that younger individuals were promoted from PG 6 to PG 7 positions. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, p. 26, Defendants' Brief in Support of Their Motion for Summary Judgment, p. 19, and Exhibit E. Plaintiff states that at least twelve individuals were promoted from PG 6 to PG 7 levels. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, p. 7. Plaintiff claims he is at least as qualified as these younger individuals. *Id.* Finally, plaintiff alleges that he was qualified for the position from which he was demoted and to which other younger employees were either promoted or transferred. Plaintiff asserts that his performance rankings from 1970–1985, the time period in which he was a PG 7 manager, ranged from satisfactory to that of a major contributor. *Id.* at 4. The court finds, therefore, that viewing the proffered evidence in a light favorable to the plaintiff, Mr. Wood has established a prima facie case of age discrimination pursuant to *McDonnell Douglas*.

### 2. *Defendant's Rebuttal of the Prima Facie Case*

■ The court notes that the mere establishment of a prima facie case of discrimi-

---

4. The protection of the ADEA is limited to persons over 40 years of age.

5. The third prong is treated with some flexibility in age discrimination cases. Some Circuits have stated explicitly that a plaintiff need only show that he was replaced by a younger person. *See, e.g., Carden v. Westinghouse Electric Corp.*, 850 F.2d 996, 1000 (3d Cir.1988), *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1542 (10th

Cir.1987). The First Circuit has gone so far as to hold that a plaintiff attempting to prove age discrimination need not show that he was replaced by someone younger. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012–13 (1st Cir.1979) (*McDonnell-Douglas* test does not require plaintiff to prove that person outside protected class was hired in complainant's place).

nation does not foreclose the possibility of summary judgment in favor of the employer. *Young,* 840 F.2d at 828. The presentation of a prima facie case presents a rebuttable presumption of discrimination, but does not alone establish a genuine issue of material fact for the jury. *Id.* at 829 (citing with approval *Pace v. Southern Railway Systems,* 701 F.2d 1383 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). Thus, the court must look next to Southern Bell's corner to determine whether it can respond with a legitimate, non-discriminatory reason for demoting the plaintiff. *Young,* 840 F.2d at 828.

Here, defendant introduces the Affidavit of Virginia Reynolds to demonstrate that the seven managers who received lateral transfers during the 180 period prior to plaintiff's filing of his EEOC complaint all had appraisal records superior to plaintiffs. Defendant submits a lengthy description of its methods of ranking its employees. Based on these formulae for ranking employees, defendant maintains that plaintiff was not as capable at the other PG 7 managers who received lateral transfers to preserve their PG 7 status. Defendant contends that it had every right to demote plaintiff based on these allegedly neutral ranking criteria. Thus, at the outset, it appears that defendant has propounded a legitimate and non-discriminatory reason for failing to retain plaintiff as a PG 7 manager.

### 3. *Plaintiff's Burden of Proving Pretext*

■ Plaintiff, however, manages to present significantly probative evidence to demonstrate the defendant's proffered reason for failing to retain plaintiff at PG 7 level is mere pretext. Plaintiff asserts that even though the records of the seven PG 7 managers who received lateral transfer are superior in the eyes of the employer, the reason they are deemed superior is because defendant places a premium on youth in assessing promotability. To demonstrate this point, plaintiff shows that only eight out of twenty-five PG 7 managers over fifty years of age were deemed promotable while twenty-eight out of twenty-nine PG 7

managers under the age of fifty were rated promotable. The court believes that these admittedly informal statistics do at least create evidence from which a jury could conclude that the reasons articulated by defendant for failing to promote plaintiff are merely a pretext for discrimination.

■ In addition to the question of whether age was a factor in rating promotability of PG 7 managers, the court finds that plaintiff has presented another question which has not been answered by defendant. Plaintiff alleges that since his demotion and "since he has been rated promotable, defendants have promoted twenty-four (24) individuals from PG 6 to PG 7 level positions without considering Mr. Wood for the positions." Opposition, p. 9. Defendants attempt to avoid answering this charge by stating that these promotions did not occur within the 180 window preceding plaintiff's filing of his EEOC charge. Defendants simply do not respond to this claim.

As discussed above, evidence of defendant's discrimination is not circumscribed by the 180 day filing period. Plaintiff is free to present evidence of discrimination for the period after October 9, 1985. Thus, a question still remains as to whether the failure of defendant to re-assign plaintiff to his former PG 7 status after his demotion was based on age discrimination.

### CONCLUSION

The court GRANTS BellSouth's motion to dismiss which the court had formerly converted into a motion for summary judgment. Accordingly, BellSouth is DISMISSED from this action and Southern Bell is the only remaining defendant.

Because the court finds that plaintiff has cast doubt on the legitimacy of defendant Southern Bell's proffered reasons for demoting him, plaintiff is entitled to take his case to the jury on the age discrimination claim. The court DENIES defendant's motion for summary judgment on the merits of this action.

So ORDERED.