Susan HARRIS, Plaintiff,

v.

PALMETTO TILE, INC., Henry Goldberg and Marque Collins, Defendants.

Civ. A. No. 3:92–3391–19.

United States District Court,
D. South Carolina,
Columbia Division.

Oct. 14, 1993.

264

J. Lewis Cromer and Craig L. Berman, Cromer & Mabry, Columbia, SC, for plaintiff.

Stephen T. Savitz and Kathryn Thomas, Gignilliat, Savitz & Bettis, Columbia, SC, for defendants Palmetto Tile Distributors, Inc. and Henry Goldberg.

H. Wesley Kirkland, Jr., Kirkland, Dodson, Rush & Riddle, Columbia, SC, for defendant Marque Collins.

## MEMORANDUM OPINION AND ORDER

SHEDD, District Judge.

This matter comes before the Court upon Motion by Defendants Palmetto Tile, Inc. and Henry Goldberg for Summary Judgment.[1] The parties are not of diverse citizenship and only Plaintiff's claim pursuant to Title VII presents a federal question. After thoroughly reviewing the record and carefully considering the applicable legal principles, the Court concludes that Defendants' motion for summary judgment should be granted as to Plaintiff's Title VII claim because the

---

1. The motion is styled "Defendants' Motion to Dismiss and/or for Summary Judgment." Because the Court has considered materials outside the pleadings in determining this motion, Defendants' motion to dismiss is incorporated into their motion for summary judgment.

Court lacks subject matter jurisdiction over that claim.[2] Moreover, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims and Defendants' state law counterclaims and will remand these claims to state court.

## I.

Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is not "a disfavored procedural shortcut, but rather [it is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). When the moving party properly supports its motion with a showing that it is entitled to judgment as a matter of law, the party opposing the motion must present "affirmative evidence" to establish a genuine dispute of material fact which is necessary to defeat the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257–58, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the Court is required to view any permissible inferences to be drawn from the underlying facts in the light most favorable to the non-moving party. *Moore v. Winebrenner*, 927 F.2d 1312, 1313 (4th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). If, after viewing the evidence in the light most favorable to the nonmoving party, the Court finds that the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial, the Court must grant summary judgment against that party. *Lujan v. National Wildlife*

*Fed'n,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

## II.

The material facts in this case are not in dispute. At all times pertinent to this action, Plaintiff was employed by Palmetto Tile, Inc. ("Palmetto"). In her Title VII claim, Plaintiff alleges that during her employment by Palmetto, she was sexually harassed either by or at the direction of certain Palmetto employees. The members of Palmetto's Board of Directors are Henry Goldberg, his father Felix Goldberg, and his brother Karl Goldberg. Henry Goldberg and Karl Goldberg, along with Ira Greenberg, also serve as members of the Board of Directors of an entity known as the Tile and Carpet Center, Inc. ("the Carpet Center").

Both Palmetto and the Carpet Center deal in ceramic tile, but Palmetto also deals in plastic laminate and related products. The Carpet Center caters to the residential market, while Palmetto caters more to the commercial market. Each entity carries its own exclusive product lines, but occasionally the two entities jointly purchase commodity items, such as cement, because it is not economical for either entity to purchase an entire load of such items at any one time. The two entities do not share office space, and they have different business addresses and different Registered Agents. With the possible exception of Ira Greenberg, none of the employees at the Tile and Carpet Center perform any work for Palmetto, and nothing in the record indicates that any of Palmetto's employees have ever worked at the Carpet Center. Each entity maintains its own, separate payroll account, no manager for either entity does work for the other entity, and neither entity guarantees the loans of the other entity.

The profit sharing plans for the two entities are administered under one plan but

---

**2.** At an earlier hearing on plaintiff's motion to remand, the Court found that the original complaint conferred federal jurisdiction because, as pled, it could be read to allege a retaliatory discharge in violation of OSHA. *See McElroy v. SOS International, Inc.,* 730 F.Supp. 803, 805 (N.D.Ill.1989). Although the plaintiff informed the Court that she is not pursuing this action pursuant to OSHA, the Court retained jurisdiction over this action. The basis for the Court's retaining jurisdiction was not a possible OSHA claim, which had been disclaimed by the Plaintiff, but instead the Plaintiff's addition of the Title VII claim to a complaint which had properly been removed to federal court.

each entity's funds are accounted for separately. Similarly, the two companies' insurance plans are jointly administered but each company's funds are accounted for separately. The summary of benefits which Plaintiff received from Palmetto during the course of her employment was entitled "Tile & Carpet Center's Profit Sharing Plan." During her employment, Plaintiff also received an "Explanation of Benefits" sheet which lists her as the employee and Tile and Carpet Center, Inc. as her employer.

### III.

■ Defendants contend that because Palmetto employs less than fifteen employees, it is not subject to the provisions of Title VII and the Court, therefore, lacks subject matter jurisdiction over Plaintiff's Title VII claim.[3] As "a jurisdictional prerequisite to the maintenance of a Title VII action," the plaintiff must prove that the defendant employer is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." *Stacy v. Toomer*, 930 F.2d 23 (4th Cir.1991) (unpublished) (available on Westlaw). *Accord Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir. 1983). It is undisputed that Palmetto, Plaintiff's immediate employer, has employed less that fifteen employees at all times pertinent to this action. Plaintiff, however, argues that Palmetto is so interrelated with the Carpet Center that the two companies are in fact a "single employer" for Title VII purposes. Accordingly, Plaintiff argues that pursuant to the "single employer doctrine," the Court has subject matter jurisdiction because Palmetto and the Carpet Center together employ more than the requisite fifteen persons.

The seminal case on the single employer doctrine is *Armbruster v. Quinn*, 711 F.2d 1332 (6th Cir.1983), in which the Sixth Circuit found "the similarity in language of [Title VII and the National Labor Relations Act] indicative of [Congress'] willingness to allow the broad construction of the NLRA to provide guidance in the determination of whether, under Title VII, two companies should be deemed to have substantial identity and treated as a single employer." *Id.* at 1336. Accordingly, the court adopted the following factors, formulated by the NLRB, to be used in deciding whether two entities' employees should be combined in determining whether Title VII's jurisdictional prerequisite of fifteen employees has been met: (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. Of these factors, centralized control of labor relations is the central concern, and "the most important requirement is that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *Armbruster*, 711 F.2d at 1337. *Accord Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983) (the critical issue is "what entity made the final decisions regarding employment matters related to the person claiming discrimination?").

The Fourth Circuit has never explicitly adopted the "single employer doctrine" espoused by *Armbruster*, but in *Johnson v. Flowers Industries, Inc.*, 814 F.2d 978 (4th Cir.1987), an age discrimination case, the Court discussed a plaintiff's ability to hold a parent corporation liable for the alleged discriminatory acts of its wholly-owned subsidiary. The *Johnson* Court cited *Armbruster* for the proposition that "[t]he parent company is the employer only if it 'exercises a degree of control that exceeds the control normally exercised by a parent corporation,'" *Id.* at 981, and it acknowledged that

---

**3.** Defendants raise two additional arguments in support of their motion for summary judgment as to Plaintiff's Title VII claim. First, Defendants argue that this cause of action is barred by Title VII's ninety day statute of limitations. Defendants also argue that the administrative determinations of the South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission that Palmetto employed less than fifteen employees at all pertinent times are binding upon the Court pursuant to the doctrine of *res judicata*. These arguments are mooted by the Court's determination that it lacks subject matter jurisdiction over Plaintiff's Title VII claim.

such control is normally assessed in light of the four factors adopted in *Armbruster. Id.* at n. *. The Fourth Circuit, however, concluded that "[w]e need not adopt such a mechanical test in every instance; the factors all point to the ultimate inquiry of parent domination [and] . . . simply express relevant evidentiary inquiries whose importance will vary with the individual case." *Id.* The Court went on to hold that two entities could be considered as a single employer [4] in the following situations: (1) when one entity controls the employment practices and decisions of the other, and (2) when one entity dominates the operations of the other. *Johnson,* 814 F.2d at 981.

Plaintiff argues that two documents in the record create the inference that Palmetto and the Carpet Center are a single entity. The first document is a "Summary Plan Description of the Tile & Carpet Center, Inc. Profit Sharing & Trust" which Plaintiff claims to have received from Palmetto during the course of her employment. The second document is an "Explanation of Benefits" generated by Principal Mutual Life Insurance Company which indicates that the "employee" is the Plaintiff and that the "employer" is Tile & Carpet Center, Inc. Plaintiff argues that these documents support the inference that she is an employee of both Palmetto and the Carpet Center, which in turn shows that the two entities are a single employer for Title VII purposes.

■ The Court finds, however, that these documents do not give rise to the reasonable inference that Plaintiff was employed by the Carpet Center. Henry Goldberg, Palmetto's president, testified that the insurance and profit sharing plans of Palmetto and the Carpet Center "are administered under one plan which is kept separate between the two companies." The practice of pooling the assets

of several small employers into a fund for purposes of insurance and pensions is not uncommon, and ERISA expressly allows such "multiemployer pension plans." *See* 29 U.S.C. §§ 1001a, 1002(37). Hence the mere fact that Palmetto and the Carpet Center pooled their resources in the administration of their insurance and profit sharing plans does not indicate that the participating employees are the employees of both entities.[5]

■ Even if this evidence could support an inference that Plaintiff was employed by both Palmetto and the Carpet Center, however, that fact alone could not support the conclusion that Palmetto and the Carpet Center are a single employer for Title VII purposes.[6] It is the relationship between the two entities, not the fact that both entities happen to employ the same person, that determines whether the two entities constitute a single employer. *See Armbruster,* 711 F.2d at 1337 ("the most important requirement is that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer."). Even if Plaintiff is employed by both entities, therefore, she must still prove a relationship between the two entities for the single employer doctrine to apply. *See Armbruster,* 711 F.2d at 1337 ("The showing required to warrant a finding of single-employer status has been described as '*highly integrated* with respect to ownership and operations.' ") (emphasis added) (quoting *Fike v. Gold Kist, Inc.,* 514 F.Supp. 722, 726 (N.D.Ala.1981), *aff'd* 664 F.2d 295 (11th Cir.1981)).

■ The Court, therefore, will first apply the test adopted by the Fourth Circuit in

---

4. While *Johnson* addresses whether a parent corporation may be considered the employer of its wholly-owned subsidiary's employees in an age discrimination case, the principles of the case are equally valid for determining whether two business entities may be deemed to be a single employer in the context of Title VII.

5. This is particularly true in light of the fact that the funds of the two entities were accounted for separately.

6. Under Plaintiff's analysis, the full-time employer of a plaintiff who "moonlights" on a part-time basis for an unrelated entity could be subject to Title VII liability solely on the basis of the discriminatory actions of the part-time employer over which it has absolutely no control. This possibility of liability without fault is a concept foreign to all Title VII jurisprudence of which the Court is aware.

*Johnson* to determine whether Palmetto and the Carpet Center are a single employer for the purposes of Title VII. Pursuant to *Johnson,* two entities may be deemed a single employer if one entity controls the employment practices and decisions of the other. *Johnson,* 814 F.2d at 981. Such control would be evidenced if "the parent company hired and fired the subsidiary employees, routinely shifted them between the two companies, and supervised their daily operations." *Id.* Applying this reasoning to the case at bar indicates that the Carpet Center did not control the employment practices and decisions of Palmetto. The Plaintiff was hired by Henry Goldberg, the president of Palmetto, and Goldberg handled all matters relating to Plaintiff's employment, such as imposing dress codes, discussing grievances, determining sick leave policy, setting sales quotas and commissions, and determining which office within the store the Plaintiff would occupy. Although the record indicates that Ira Greenberg, an employee of the Carpet Center, was listed as an employee for Palmetto on its "Employer Quarterly Report of Employee Wages" for the quarter ending December 31, 1991, this hardly indicates that employees were *routinely* shifted between the two companies. Moreover, nothing in the record indicates that any other employees were shifted between the two companies.[7]

Finally, the record before the Court indicates that Henry Goldberg controlled the daily operations of Palmetto. The record, however, does not indicate who controlled the daily operations and employment practices of the Carpet Center. The record, therefore, cannot support a reasonable inference that Palmetto controls the Carpet Center or that the Carpet Center controls Palmetto. In fact, the record indicates just the contrary: no manager for one entity works for the other entity. The Court, therefore, finds as a matter of law that neither entity controls the employment practices and decisions of the other.

Under the second test established by the *Johnson* court, two entities could be considered a single employer if one entity dominates the operations of the other. The court explained this test by stating that:

> the subsidiary may be highly integrated with the parent's business operations, as evidenced by the commingling of funds and assets, the use of the same work force and business offices for both corporations, and the severe undercapitalization of the subsidiary.

*Id.* Although Palmetto and the Carpet Center jointly administer their profit sharing and insurance programs, these funds are not "commingled" because separate accounts are kept for each company. Moreover, nothing indicates that the companies' inventories are commingled—in fact, each company carries a distinct line of products.[8] Each company maintains its own, separate payroll account, and no manager for either entity does work for the other entity. The two entities do not share office space, and aside from Ira Greenberg,[9] none of the employees at the Tile and Carpet Center performs any work for Palmetto. The Court, therefore, finds as a matter of law that, on the record before it, neither entity dominates the operations of the other. Accordingly, the Court finds on the basis of the Fourth Circuit's decision in *Johnson* that the employees of the Carpet Center cannot be included with the employees of Palmetto in determining the number of Palmetto employees for the purposes of Title VII.

7. Although Plaintiff argues that the record supports the inference that she was employed by the Carpet Center, nothing in the record indicates that she did any work for the Carpet Center or that anyone employed by the Carpet Center supervised or controlled any of her work.

8. Goldberg testified that the two entities jointly purchase "one or two" commodity items, such as cement, because such items are sold in bulk and "it doesn't pay" for one entity to purchase an entire order of such items. Such joint purchases of a few bulk items hardly constitutes the "highly integrated" commingling of assets contemplated by the *Johnson* court, particularly in light of the fact that each entity carries exclusive product lines.

9. Again, the fact that one of the Carpet Center's employees is listed on Palmetto's "Employer Quarterly Report of Employee Wages" for a single quarter hardly constitutes the "highly integrated" joint use of employees contemplated by the *Johnson* court.

Alternatively, the Court finds on the basis of the four-factor test espoused by the *Armbruster* court that the employees of the Carpet Center cannot be included with the employees of Palmetto in determining the number of Palmetto employees for the purposes of Title VII. One factor to be considered under the *Armbruster* test is commonality of ownership. While Plaintiff has made a showing of common, although not identical, ownership, such a showing is not sufficient to establish that Palmetto and the Carpet Center are a single employer. *Cf. Johnson,* 814 F.2d at 982 ("One-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil.") (citing *United States v. Jon–T Chemicals, Inc.,* 768 F.2d 686, 691 (5th Cir.1985), *cert. denied* 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986)).

The record contains no evidence whatsoever as to the factor of common management. As stated previously, it appears from the record that Henry Goldberg manages Palmetto, but nothing in the record indicates who manages the Carpet Center. The only evidence on point indicates that the two entities are separately managed.

The final two factors considered by the *Armbruster* court, interrelation of operations and centralized control of labor relations, are analogous to the domination of operations test and the control of employment practices test set forth in the Fourth Circuit's *Johnson* opinion. As discussed above, nothing in the record indicates an interrelation of operations between the two companies, and the record evidences separate, not centralized, control of labor relations. Hence even under the *Armbruster* analysis, the employees of the Carpet Center cannot be included with the employees of Palmetto in determining the number of Palmetto employees for the purposes of Title VII.

The record in this case indicates that Palmetto Tile has had less that fifteen employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. Accordingly, the Court has no jurisdiction over Plaintiff's Title VII claim, which is the only federal claim in this suit. Moreover, the Court declines to exercise jurisdiction over the remaining supplemental claims and will remand those claims to state court.[10] *See* 28 U.S.C. § 1367(c).

### ORDER

Based on the foregoing, **IT IS HEREBY ORDERED THAT** Defendants' Motion For Summary Judgment is **GRANTED** as to Plaintiff's Title VII cause of action. **IT IS FURTHER ORDERED** that all remaining causes of action be **REMANDED** to the Richland County Court of Common Pleas.

**IT IS SO ORDERED.**

---

**10.** Although the evidence in this case, all of which must be taken as true at this stage of the proceedings, indicates that all parties to this action have engaged in troubling conduct, the remaining issues presented in this action are governed by state law and should be resolved by the state court. The Court expresses no opinion as to the validity of any of the state law claims or counterclaims presented in this action.