### Jane T. POPKO, Plaintiff,

#### v.

### PENNSYLVANIA STATE UNIVERSITY, The Milton S. Hershey Medical Center, James Adams, Tasna Kitch, and Suzanne Schick, Defendant.

#### No. Civ.A. 1:CV:97–0065.

United States District Court,
M.D. Pennsylvania.

Feb. 22, 2000.

---

Andrew J. Ostrowski, Serratelli Schiffman Brown & Calhoun, Harrisburg, PA, for Jane T. Popko, plaintiff.

James M. Horne, McQuaide Blasko Schwartz, Fleming & Faulkner, Inc., State College, PA, for Pennsylvania State University—Milton S. Hershey Medical Center, defendant.

### MEMORANDUM

CAPUTO, District Judge.

## I INTRODUCTION

This case is before the Court on remand from the Court of Appeals. In relevant synopsis, the procedural history of the case is as follows. On January 14, 1997, plaintiff, Jane T. Popko, filed a complaint alleging unlawful discrimination and retaliation action under the American with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213 (Law.Co-op.Supp.1997) and the Pennsylvania Human Relations Act (PHRA), 43 Pa.Stat.Ann. §§ 951–963 (1991 & Supp.1997). On November 24, 1997, defendants Pennsylvania State University, the Milton S. Hershey Medical Center, James Adams, Tasna Kitch, and Suzanne Schick moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. On February 27, 1998, this Court granted the defendants' motion for summary judgment. On March 12, 1998, plaintiff filed a motion for reconsideration of the Court's February 27, 1998 Order. The motion alleged that the Court had erred in holding that plaintiff was not disabled and in not reaching the issue of retaliation. In a Memorandum and Order, filed June 16, 1998, the Court reaffirmed its determination that the plaintiff was not disabled and also reversed its prior decision not to reach the retaliation issue. In considering the merits, however, the Court granted defendants summary judgment on the retaliation issue as well. Plaintiff filed a notice of appeal on July 9, 1998. On October 4, 1999 the Court of Appeals issued an Order, remanding the case to this Court "for further consideration of the claim based on epilepsy in light of *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), *Albertsons Inc. v. Kirkingburg*, 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999), *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999), and *Taylor v. Phoenixville School Dist.*, 184 F.3d 296 (3d Cir.1999). The court does not express any opinion as to the proper resolution of the issue. The district court may determine what procedures are appropriate for its consideration, and the decision should be returned to this panel for final determination of the appeal." *Popko v. Pennsylvania State Univ.*, No. 98–7403, slip op. at 2 (3d Cir. Oct. 4, 1999).

## II BACKGROUND

In February of 1973, plaintiff was hired by the defendant as a Medical Technologist in the Clinical Laboratories, and she has been employed there ever since. Plaintiff has two conditions which she claims are disabilities within the meaning of the Act. In her affidavit submitted in opposition to defendants' summary judgment motion, plaintiff states:

[t]he permanent limitations on my life activities due to my medical conditions/disabilities are:

a) Right brachial plexopathy—...

b) Idiopathic epilepsy (sleep-related seizure disorder)—need regular sleep cycle of 7–8 hours that I must compensate for every time if not sufficient; defer driving automobile if I have any symptoms of seizure activity, and have frequently been driven to work by my husband after working evening shifts; I have permanently restricted my evening activities to the extent that I am home and asleep by a regular time in order to meet my requirements; I would not be capable of child rearing responsibilities if I was still scheduled for rotating shifts and late evening events and, my husband currently assumes the exclusive responsibility for those matters involving our children, and any other issues of any nature that may occur during my period of rest.

(Pl.'s Aff., Pl.'s App. in Opp. to Defs' Summ.J.Mot., Ex. 6, ¶ 4.) Although limited, plaintiff can bike, garden, sail, and drive. (Def.'s App., Ex. 32 at 4–19, 42–44). In addition, plaintiff's disorder does not limit her from working a standard day time shift.

## III DISCUSSION

### A. Brief Review of the Relevant Appellate Decisions

The Court of Appeals has directed the Court to reexamine plaintiff's claim based on epilepsy in light of the recent appellate decisions in *Sutton, Albertsons Inc.,Murphy* and *Taylor.* A brief review of these cases is therefore in order.

#### 1. *Sutton*

The petitioners in this case were severely myopic twin sisters, having visual acuity of $^{20}/_{200}$ or worse, but with corrective measures, both women functioned identically to individuals without similar impairments. *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 2143, 144 L.Ed.2d 450 (1999). The sisters applied to respondent, a major commercial airline carrier, for employment as commercial airline pilots, but were rejected because they failed to meet the airline's minimum requirement of uncorrected visual acuity of $^{20}/_{100}$ or better. *Id.* The women brought suit under the ADA, but their action was dismissed for failure to state a claim upon which relief can be granted. *Id.* at 2144. The Tenth Circuit affirmed. *Id.* On appeal, the Supreme Court concluded that the complaint was properly dismissed. *Id.* at 2143. In reaching this result, the Court held that "the determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment, including, in this instance, eyeglasses and contact lenses." *Id.* The Court explicitly repudiated the EEOC guidelines' directive that persons be judged in their uncorrected or unmitigated state, calling this approach "directly counter to the individualized inquiry mandated by the ADA." *Id.* at 2147.

#### 2. *Albertsons, Inc.*

In this case, respondent, an effectively monocular truckdriver, brought suit under the ADA after he was fired from his job because he could not meet the basic Department of Transportation vision standard for commercial truck drivers. *Albertsons, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 2166, 144 L.Ed.2d 518 (1999). The district court granted the em-

ployer's motion for summary judgment, but was reversed on appeal by the Ninth Circuit Court of Appeals. *Id.* The Supreme Court in turn reversed the Ninth Circuit, ruling that it had erred, *inter alia,* in its interpretation of the disability standards under the ADA. *Id.* at 2167.

The Supreme Court identified three missteps that the Ninth Circuit made in determining that Kirkingburg's monocularity met the ADA's first definition of disability, i.e., a physical or mental impairment that "substantially limits" a major life activity, 42 U.S.C. § 12101(2)(A). *Id.* Most pertinent to the issue before this Court, the Supreme Court reaffirmed *Sutton*'s holding that mitigating measures must be considered in determining whether a disability exists. *Id.* at 2168–69. Moreover, the Supreme Court broadened *Sutton,* stating: "We see no principled basis for distinguishing between measures undertaken with artificial aids like medications and devices, and measures undertaken, whether consciously or not, with the body's own systems." *Id.* at 2169. This insight was drawn from evidence in the record that plaintiff's brain was able to compensate for his lack of vision in one eye. *Id.* at 2168. Second, the Supreme Court disapproved of the circuit court's examination of plaintiffs status by reference to the effects of monocularity in general, rather than by examining the effects of monocularity on Kirkingburg individually. *Id.* at 2169. Third, the Supreme Court disapproved of the Ninth Circuit's reliance on the bare fact that Kirkingburg saw differently from most people to conclude that he was disabled. *Id.* at 2168. The Court held that the correct issue is whether a plaintiff is substantially limited by his or her impairment. *Id.*

### 3. *Murphy*

In this case, an employee, whose mechanics position required him to drive commercial vehicles, sued United Parcel Service under Title I of the ADA. 527 U.S. 516, 119 S.Ct. 2133, 2135, 144 L.Ed.2d 484 (1999). The suit resulted from his dismissal when it was discovered that his blood pressure exceeded Department of Transportation health certification requirements for drivers of commercial vehicles. *Id.* The Supreme Court underscored again that whether an employee's impairment "substantially limits" one or more major life activities must be determined with reference to the mitigating measures he employs. *Id.* at 2136. The Court extended this method of analysis to the employee's hypertension, holding that since it did not substantially limit his major life activities when he was medicated, he was not disabled under the ADA. *Id.* at 2135–36.

### 4. *Taylor*

In this Third Circuit decision handed down subsequent to the above trilogy of Supreme Court cases, a former secretary suffering from bipolar disorder sued the school district where she had worked, alleging that it had failed to provide her reasonable accommodations for her mental illness. *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 301. The district court entered summary judgment in the school district's favor, finding that bipolar disorder did not constitute a disability under the ADA. *Id.* at 302. The Third Circuit reversed. *Id.* Applying the recent Supreme Court precedents, the Court of Appeals evaluated whether Taylor's mental condition, even under medication, substantially limited her in the major life activity of thinking. *Id.* at 307–09. Viewing the record in the light most favorable to the plaintiff, the Court of Appeals concluded that, even while medicated, Taylor's impairment persisted to some degree, requiring ongoing visits to the psychiatrist. *Id.* at 309. The Third Circuit also observed that Taylor's medicine (therapeutic levels of lithium) itself caused numerous side effects, and noted that drug side effects can be important in evaluating whether someone is disabled. *Id.* at 308–09.

## B. Analysis

■ The essential principle undergirding each of the four precedents above is that disability is to be evaluated in its mitigated, rather than untreated state. When the Court first decided defendants' motion for summary judgment, plaintiff urged the Court to consider plaintiff in her unmitigated state. The Court held then that plaintiff was not disabled, and granted summary judgment in defendants' favor. The Court of Appeals' remand instructions now require the Court to consider whether, in her mitigated state, plaintiff suffers from a disability. I hold once again that she does not.

In an affidavit, plaintiff's treating physician averred that "Ms. Popko's idiopathic epilepsy has been, and will continue to be, successfully controlled and treated through the proscription of activities that disrupt her sleep-wake cycle." (Aff. of Dr. Jeffrey Tolan, Pl.'s App. of Ex's [Vol. 1], Ex. 5, ¶ 7). Likewise, Ms. Popko's own affidavit specifies that she has not had a medically treated grand mal seizure since 1973, and has only had one other grand mal seizure which took place sometime between 1975 and 1980. (Pl.'s Aff., Pl.'s App. in Opp. to Defs' Summ.J.Mot., Ex. 6, ¶ 3). Even when plaintiff does not treat her epilepsy by getting a regular night's sleep, she experiences at most, a generalized shakiness in the morning which resolves itself relatively quickly. (*Id.*) In view of this evidence, I find that Ms. Popko is like the plaintiffs in the trilogy of Supreme Court cases. Because her epileptic seizure activity does not interfere with major life activities when she treats it by adhering to her therapeutic sleep regimen, she, like the plaintiffs in the Supreme Court trilogy, is not disabled under the ADA.

Plaintiff, in her remand brief, no longer bases her disability claim on her epilepsy seizure activity itself. She now asserts that her epilepsy is a disability under the ADA because the disorder interferes with the major life activity of "sleeping as it relates to plaintiff's epilepsy." (Doc. 57 at 4.) Plaintiff appears to make two separate arguments regarding sleeping.

■ First, plaintiff contends that sleep is a major life activity and that she is substantially limited in that activity because she must average seven to eight hours of sleep a night in order to prevent seizure activity. Specifically, she contends that she is significantly restricted as to the condition, manner or duration under which she can perform the major life activity of sleeping as compared to the average person in the general population. *See* 29 C.F.R. § 1630.2(j)(1), (2), *infra*, at n. 1. Sleep has been recognized as a major life activity. *See McAlindin v. County of San Diego*, 192 F.3d 1226, 1234 (9th Cir.1999); *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.1999); *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 643 (2d Cir. 1998). The cases which deal with sleep as a major life activity are focused on insomniac plaintiffs who cannot sleep, not on plaintiffs who cannot stay up as late or as often they might care to. *See, e.g., Baulos v. Roadway Exp., Inc.*, 139 F.3d 1147 (7th Cir.1998), *Williams v. City of Charlotte*, 899 F.Supp. 1484 (W.D.N.C.1995). Plaintiff does not cite, nor does research disclose a case which supports the plaintiff's contention that a requirement of an average of seven to eight hours of sleep is somehow a substantial limitation of the major life activity of sleeping. While the argument is an interesting one, I find it difficult to conclude that the need for seven to eight hours of sleep, a common enough condition generally, is substantially limiting.[1]

---

1. The term "substantially limits" means: (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1).

Plaintiff's second argument concerns sleep as the treatment for the epilepsy or epileptic seizure activity. In *Sutton,* the Supreme Court said that "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." *Sutton,* 527 U.S. 471, 119 S.Ct. 2139 at 2146, 144 L.Ed.2d 450. It is undisputed that if plaintiff averages seven to eight hours of sleep, her epileptic seizure activity is curtailed. Thus, the corrective measures control the epilepsy and, consequently, the impairment of the major life activity of working. *See Id.* Unlike the plaintiff in *Taylor,* the treatment, sleep, effectively and completely controls and eliminates Ms. Popko's disabling condition. *Taylor,* 184 F.3d at 307–09. Moreover, the required seven to eight hours of sleep does not, as in *Taylor,* produce side effects which are in themselves disabling. *Id.*

Accordingly, plaintiff's arguments fail to raise a genuine issue of material fact as to either epilepsy or sleep. The latter subject, sleep, was not mandated by the Court of Appeals, but since plaintiff raised it before me, I thought it appropriate to address.

## IV CONCLUSION

In conclusion, the Court again finds, as a matter of law, that plaintiff is not, by reason of her idiopathic epilepsy, disabled within the meaning of the ADA. Plaintiff also urges this Court to reconsider its holdings regarding plaintiff's right brachial plexopathy and the issue of retaliation. These issues have been addressed by the Court in previous Memoranda; they and plaintiff's "regarded as having" claim pur-

suant to 42 U.S.C. § 12102(2)(C) are beyond the scope of this remand.

An appropriate Order will follow.

### *ORDER*

NOW, this __ day of FEBRUARY 2000, upon consideration of additional case law per the Third Circuit panel's Order of October 4, 1999, it is hereby ORDERED that:

1.  the Court reaffirms its prior determination that plaintiff is not, by reason of her idiopathic epilepsy, disabled within the meaning of the ADA;

2.  this decision shall be returned to the Third Circuit panel for determination of the appeal.

---

The following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) The nature and severity of the impairment; and (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).