**John A. ROWLES, Plaintiff,**

v.

**AUTOMATED PRODUCTION SYSTEMS, INC., and William Donohue, individually and in his official capacity as President of Automated Production Systems, Defendants.**

**No. Civ.1:CV–98–0707.**

United States District Court,
M.D. Pennsylvania.

March 29, 2000.

Lisa M. Rau, Kairys, Rudovsky, Epstein, Messing & Rau, Philadelphia, PA, Thomas H. Earle, Disablties Law Project, Philadelphia, PA, Robert W. Meek, Disability Law Project, Philadelphia, PA, for John A. Rowles, plaintiff.

Michael W. King, Stock and Leader, York, PA, Melinda B. Kaufmann, Stock and Leader, PC, York, PA, Francis R. Laws, Kollman & Sheehan, P.A., Baltimore, MD, for Automated Production Systems, Inc., defendant.

### MEMORANDUM

RAMBO, District Judge.

Before the court are the following motions: (1) Defendants' April 9, 1999 motion to alter or amend the court's March 26, 1999 memorandum opinion addressing the parties' cross-motions for summary judgment;[1] (2) Plaintiff's April 9, 1999 motion for reconsideration of the Memorandum Opinion; (3) Defendants' July 26, 1999 motion for reconsideration of the Memorandum Opinion; and (4)Plaintiff's August 11, 1999 "cross motion for summary judgment on the issue of disability." The parties have briefed the issues, and the matter is ripe for disposition.

## I. *Background*

### A. *Procedural History*

The instant case is an employment discrimination action. Plaintiff John A. Rowles instituted this action by filing a three-count complaint alleging that Defendants Automated Production Systems, Inc. ("APS") and William Donohue terminated his employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (Count I) and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. §§ 951–963 (Count II), and tortiously invaded his privacy (Count III). Plaintiff's PHRA claim was dismissed by the court on August 13, 1998, pursuant to Defendants' Rule 12(b) motion.

After completion of discovery, Defendants filed a motion seeking summary judgment on Counts I and III. Plaintiff filed a motion for partial summary judgment on Count I, seeking a ruling that Defendants' drug and alcohol abuse policy is a violation of the ADA. On March 26, 1999 the court issued a memorandum and order ruling on the parties' cross-motions. The court denied Defendants' motion in its entirety. However, the court granted in part and denied in part Plaintiffs motion, stating as follows:

> (a) The motion is granted with respect to [Plaintiff's] claim that APS's drug and alcohol abuse policy violates the ADA because it prohibits the use of

---

1. The court's March 26, 1999 memorandum opinion will hereinafter be referred to as the "Memorandum Opinion."

all legally prescribed controlled substances without a determination that such prohibition is job-related and consistent with business necessity.

    (b) The motion is denied with respect to [Plaintiff's] claim that APS's drug and alcohol abuse policy's mandatory disclosure requirement violates the ADA.

(*Rowles v. Automated Prod. Sys., Inc. et al.*, Civil No. 1:CV–98–0707 (M.D.Pa. March 26, 1999) (Doc. 42) at 33.) [2]

On April 1, 1999 the court held a pretrial conference with the parties in anticipation of holding trial during the month of April 1999. However, pursuant to Plaintiff's request, the trial was taken off the April 1999 list and placed on the October 1999 trial list.

Defendants filed a motion on April 9, 1999 seeking to alter or amend the court's order granting partial summary judgment in favor of Plaintiff. On the same date, Plaintiff filed a motion for reconsideration of the court's order denying, in part, his motion for partial summary judgment. The briefing on the parties' initial motions for reconsideration was thus completed on May 24, 1999.

On July 26, 1999, in response to the United States Supreme Court's June 22, 1999 decision in the case of *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), Defendants filed an additional motion for reconsideration of the court's March 26, 1999 Memorandum Opinion, seeking summary judgment on the issue of whether Plaintiff has a disability which is protected under the ADA. Plaintiff then responded on August 11, 1999 by filing a brief in opposition and a cross-motion for reconsideration on the issue of disability.

By order dated August 27, 1999 the court removed the instant case from the October 1999 trial list, and indicated that a new scheduling order would issue, if necessary, upon resolution of the parties' motions. Defendants filed a supplemental

memorandum in support of their motion on November 29, 1999, and by letter dated January 20, 2000, Plaintiff directed the court's attention to additional case law supporting his position with regard to the outstanding motions.

### B. *Factual Background*

The undisputed factual background was set forth by the court in the Memorandum Opinion. (Mem.Op. at 1–7.) Therefore, in the interest of brevity, the court will incorporate that portion of its memorandum by reference.

### II. *Legal Standard: Motion for Reconsideration*

■■■ "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985) (citation omitted). Therefore, a court may properly grant a party's motion for reconsideration in any of the following circumstances: "(1) the development of an intervening change in the law, (2) the emergence of new evidence not previously available, or (3) the need to correct a clear error of law or prevent a manifest injustice." *Cohen v. Austin*, 869 F.Supp. 320, 321 (E.D.Pa.1994) (citations omitted).

### III. *Discussion*

The court will first address Defendants' July 26, 1999 motion for reconsideration, regarding the issue of whether Plaintiff is sufficiently disabled so as to be entitled to the protection of the ADA in the wake of the Supreme Court's decision in *Sutton*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450. The court will then address the parties' April 9, 1999 motions for reconsideration in turn.[3]

### A. *Defendants' July 26, 1999 Motion for Reconsideration*

The ADA proscribes disability-based discrimination as follows:

---

**2.** The court will hereinafter cite to the Memorandum Opinion as "Mem.Op. at ____."

**3.** Consideration of Plaintiff's August 11, 1999 "cross motion for summary judgment on the

No entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment.

42 U.S.C. § 12112(a). The instant motion concerns the issue of whether Plaintiff is an individual with a "disability" such that he is entitled to the protections of the ADA. "Disability" is defined in the ADA as follows:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of an impairment; or

(C) being regarded a having such an impairment.

42 U.S.C. § 12102(2). "Accordingly, to fall within this definition one must have an actual disability (subsection (A)), have a record of a disability (subsection (B)), or be regarded as having one (subsection (C))." *Sutton,* 119 S.Ct. at 2144.

Plaintiff alleged in his complaint that he is a "person with a disability as defined by the ADA," and explicitly invoked all three prongs of the ADA's definition of "disability." (Compl. ¶ 50 (citing 42 U.S.C. § 12102(2)(a)(B) & (C)).) However, Defendants' motion only addresses the first prong—actual disability. *See* 42 U.S.C. § 12102(2)(A). For this reason, the court concludes that summary judgment is inappropriate, as Defendants have clearly failed to demonstrate that Plaintiff neither has a record of a disability (§ 12102(2)(B)), nor is regarded as disabled (§ 12102(2)(C)) as a matter of law.[4] Moreover, for the reasons set forth below, the court concludes that Defendants have failed to demonstrate, as a matter of law, that Plaintiff does not have an actual disability pursuant to the first prong of the ADA's definition of disability.

Defendants contend that despite suffering from epilepsy, the undisputed evidence demonstrates that Plaintiff's epilepsy is corrected by use of medication and thus, does not "substantially limit[ ] one or more of [his] major life activities." 42 U.S.C. § 12102(2)(a). Conversely, Plaintiff argues that notwithstanding his medication, his epilepsy does, in fact, substantially limit certain major life activities such that he is disabled within the meaning of the ADA. The term "substantially limits" is defined in the regulations[5] to mean, *inter alia,*

issue of 'disability' " would be inappropriate. If it is construed literally, as a motion for summary judgment, it clearly does not comport with the court's scheduling order(s). Moreover, even if it is construed as an additional motion for reconsideration, unlike Defendants' second motion for reconsideration, it is *not* premised upon an intervening change in the law; although Plaintiff's arguments on the issue of disability are cognizant of the Supreme Court's decision in *Sutton,* they are not in any way based upon that decision. Therefore, the court will strike Plaintiff's cross-motion for summary judgment and consider Plaintiff's arguments as an opposition to Defendant's second motion for reconsideration.

4. The court notes that Defendants' protestations that "Plaintiff argues [in his opposition brief], for the first time—*ever*—that he was terminated because he had a 'record of' a disability, or because he was 'regarded as'

disabled" are not well founded. (Defs.' Reply Br. at 2.) Plaintiff's complaint clearly puts Defendants on notice that he alleges a disability pursuant to all three prongs of the ADA's definition of disability. (Compl.¶ 50.) Thus, it is Defendants' burden at the summary judgment stage to demonstrate that Plaintiff is not entitled to ADA protection pursuant to any of the three prongs.

5. The regulations referred to herein are those issued by the Equal Employment Opportunity Commission ("EEOC"). The EEOC is specifically authorized to issue regulations pertaining to Title I of the ADA, 42 U.S.C. §§ 12111–12117. *See id.,* § 12116; *Sutton,* 119 S.Ct. at 2144–45. Additionally, the EEOC has issued regulations pertaining to the generally applicable provisions of the ADA (i.e., those provisions which apply to Titles I, II, and III). *See Sutton,* 119 S.Ct. at 2145 (noting that the EEOC's authority to issue regulations as to the ADA's generally applicable provisions is

"[u]nble to perform a major life activity that the average person in the general population can perform;" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). The term "major life activity" is defined by the Regulations to mean "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i).

In *Sutton,* the Supreme Court further elaborated on the standards courts must employ in undertaking the analysis of whether an ADA claimant is currently disabled pursuant to § 12102(2)(A):

> Looking at the [ADA] as a whole, it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is "substantially limited" in a major life activity and thus "disabled" under the [ADA].
>
> \* \* \* \* \* \*
>
> [W]e think the language [of the ADA] is properly read as requiring that a person be presently—not potentially or hypothetically—substantially limited in order to demonstrate a disability. A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken.
>
> \* \* \* \* \* \*
>
> The definition of disability also requires that disabilities be evaluated "with respect to an individual" and be

determined based on whether an impairment substantially limits the "major life activities of such individual." § 12102(2). Thus, whether a person has a disability under the ADA is an individualized inquiry.

\* \* \* \* \* \*

The use of a corrective device does not, by itself, relieve one's disability. Rather, one has a disability under subsection A [of § 12102(2) ] if, notwithstanding the use of a corrective device, that individual is substantially limited in a major life activity.... The use or nonuse of a corrective device does not determine whether an individual is disabled; that determination depends on whether the limitations an individual with an impairment actually faces are in fact substantially limiting.

*Id.,* 119 S.Ct. at 2146–47, 2149 (citations omitted).

In support of their argument, Defendants point to the affidavit and deposition testimony of Plaintiff's doctor, Stuart Goodman, M.D. In his affidavit, Dr. Goodman states that "[u]nder his current medical regimen, [Plaintiff's] seizure disorder i[s] under excellent control." (Defs.' Appendix, Ex. 4, Decl. of Dr. Goodman ¶ 11.) Likewise, in his deposition, Dr. Goodman testified that, "if mitigated by prescribed medications, [Plaintiff] would not experience substantial seizure-related impairment with respect to [walking, talking, speaking, seeing, and hearing]." (*Id.,* Ex. 7, Dr. Goodman Dep. at 58.)

Plaintiff, on the other hand, contends that despite the fact that his medication does indeed limit his seizure activity, he nevertheless "still does experience breakthrough episodes and he is at risk for potential short and long term side effects [from his medication]." [6] (Pl.'s App., Ex.

---

specious, but nevertheless citing to them for guidance).

**6.** The court notes that to the extent that Plaintiff contends that he is substantially limited insofar as the side effects of his medication are concerned, the record is devoid of specific

evidence in support of this contention. Rather, Plaintiff's argument regarding side effects is supported only by generalized declarations regarding *potential* side effects by Dr. Goodman. (*See* Pl.'s App., Ex. H, Supplemental Decl. of Dr. Goodman ¶¶ 9–11.)

H, Supplemental Decl. of Dr. Goodman ¶ 16.) Additionally, Plaintiff argues that even when medicated, he "is substantially limited in daily life activities as compared to the average person in the general population." (Pl.'s Resp. at 15.) In particular, Plaintiff cites the following examples of the limitations on his daily activities: (1) he must limit his exposure to stress and fatigue—both of which precipitate seizure activity; (2) he cannot work excessively long hours;[7] (3) he must eat meals at regularly scheduled intervals; (4) he must have at least eight hours of sleep each night; and (5) he is less able to handle the flu, as vomiting can prevent him from getting enough of his medication and thus precipitate seizure activity. (Pl.'s Dep. at 42–43; Pl.'s Decl. ¶ 4; Decl. of Dr. Goodman ¶ 11.)

█ Taking the limitations cited by Plaintiff as a whole, the court believes the record contains sufficient evidence to withstand a motion for summary judgment on the issue of actual disability. Although Dr. Goodman indicates that Plaintiff's medication limits Plaintiff's seizure activity, there is no indication that it *eliminates* Plaintiff's risk of seizures altogether. Despite Defendants' contention that "[t]he one seizure a year [Plaintiff] might suffer does not significantly interfere with any major life activity," (Defs.' Br. at 4), the court is unpersuaded. Although one may conclude that such limited seizure activity is not substantially limiting, the court cannot say, as a matter of law, that no reasonable juror could conclude otherwise. Plaintiff has presented compelling evidence that in addition to occasionally experiencing seizures—which undisputedly limits his ability to walk, talk, speak, see, hear, and work—the precautions he must take (in addition to or because of his medication) in order to reduce the likelihood of seizures substantially limits him. The court is mindful that taken individually, the limitations Plaintiff claims that he ex-

periences in connection with his condition may not be particularly significant; however, viewed in their entirety, one could reasonably conclude that such limitations are substantial.

In so concluding, the court feels compelled to distinguish two post-*Sutton* decisions which grant summary judgment for the defendant, concluding that an epileptic plaintiff was not disabled under the ADA: (1) *Todd v. Academy Corp.,* 57 F.Supp.2d 448 (S.D.Tex.1999), which is cited by Defendants in their reply brief; and (2) *Popko v. Pennsylvania State University,* 84 F.Supp.2d 589 (M.D.Pa. 2000), a recent decision by another court in this district. In *Todd,* the court held that because the plaintiff "only suffer[ed] from 'light seizures,' as opposed to seizures of the longer and more serious grand mal variety," his "momentary physical limitations . . . would not be classified as substantial." *Id.,* 57 F.Supp.2d at 453–54. This court cannot agree that such "momentary physical limitations" could not be viewed by a reasonable juror as substantial. Moreover, the record in the instant case indicates that despite his medication, Plaintiff has suffered (and thus presumably is at risk of continuing to suffer) a grand mal seizure. (Pl.'s App., Ex. H, Supplemental Decl. of Dr. Goodman ¶¶ 5–7.) Finally, the court notes that unlike Plaintiff in the instant case, other than suffering "light seizures," the only other limitations asserted by the plaintiff in *Todd* is that he must refrain from drinking alcohol.

In *Popko,* the court concluded that the undisputed evidence demonstrated that plaintiff's idiopathic epilepsy (sleep related seizure disorder) is completely controlled when she treats it "by adhering to her therapeutic sleep regimen." *Id.,* 2000 WL 232288, at * 3. The court further noted that even when the plaintiff did not properly adhere to her therapeutic sleep regimen, "she experiences at most, a gen-

---

7. In his deposition, Plaintiff testified that he "can work more than 40 [hours per week]" but that he "can't work 80 hours a week" because it is "just medically not a feasible thing to do." (Pl.'s App., Ex. B., Pl.'s Dep. at 42–43.)

eralized shakiness in the morning which resolves itself quickly." *Id.* The facts in *Popko* are thus distinguishable from those of the instant case: Plaintiff's seizures are undisputedly more severe than those of the plaintiff in *Popko* and Plaintiff alleges several other limitations in addition to seizure activity.

In accordance with the foregoing analysis, the court concludes that despite the narrowing effect the Supreme Court's *Sutton* decision has had on the definition of disability under the ADA, Defendants have failed to demonstrate, as a matter of law, that Plaintiff is not disabled within the meaning of ADA. Therefore, Defendants' July 26, 1999 motion for reconsideration will be denied.

### B. *Defendants' April 9, 1999 Motion for Reconsideration*

In the instant motion, Defendants seek reconsideration of two aspects of the Memorandum Opinion: (1) Defendants contend that the court erroneously granted in part Plaintiff's cross-motion for summary judgment; and (2) Defendants contend that the court erroneously denied Defendants' motion for summary judgment on Plaintiff's wrongful discharge claim (Count III). The court will address each of Defendants' bases for reconsideration in turn.

#### 1. *Partial Grant of Summary Judgment in Favor of Plaintiff*

Plaintiff's cross-motion for summary judgment sought a ruling that APS's drug and alcohol abuse policy violates the ADA as a matter of law because: (1) it requires employees to disclose the use of any prescription medications to APS; and (2) it prohibits the use of legally prescribed controlled substances and requires current employees to submit to drug testing without a showing that such testing is job-related and consistent with business necessity. In granting in part and denying in part Plaintiff's cross-motion, the court stated as follows:

(a) The motion is granted with respect to [Plaintiff's] claim that APS's drug and alcohol abuse policy violates the ADA because it prohibits the use of all legally prescribed controlled substances without a determination that such prohibition is job-related and consistent with business necessity.

(b) The motion is denied with respect to [Plaintiff's] claim that APS's drug and alcohol abuse policy's mandatory disclosure requirement violates the ADA.

(Mem.Op.(Doc.42) at 33.) In concluding that Plaintiff was entitled to partial summary judgment, the court reasoned that:

The text of APS's policy is clear: use or possession of legally prescribed controlled substances on APS premises is grounds for revocation of an offer of employment or dismissal. (Pl.'s Ex. M at 23.) The policy at issue in the instant case summarily excludes individuals who take Phenobarbital in order to control the seizures related to their epilepsy from employment from APS: such an individual must take the medication while at work, yet doing so is a direct violation of the policy. The policy is not restricted to individuals in safety-sensitive positions, where job-performance or business relatedness may make such a determination conform to the strictures of the ADA's prohibition against discrimination. On its face, the policy applies to all APS applicants and employees. Thus, the court finds that the policy violates the ADA to the extent that it prohibits the use of all legally prescribed controlled substances without a determination that such prohibition is job-related and consistent with business necessity. *See* 42 U.S.C. § 12112(d)(3)(C); 29 C.F.R. § 1630.14(b)(3). The court will grant Rowles' motion for summary judgment in this respect.

(Mem.Op. at 16.)

Defendants contend that the record contains evidence which demonstrate that there are issues of fact regarding APS's policy. Specifically, Defendants argue that the court cannot hold, as a matter of law, that the text of the policy is enforced

exactly as written—that is, regardless of the language of the policy, there is evidence that the policy, as enforced, does not *per se* prohibit the use of all legally prescribed controlled substances. Upon reconsideration, the court agrees that such factual issues exist, and for the reasons set forth below, the court will vacate its March 26, 1999 order insofar as it grants partial summary judgment in favor of Plaintiff.

Most notably, the court recognizes that the parties dispute the content of the confidential telephone conversation between Plaintiff and his supervisor, Mark Richard, which took place on October 24, 1996: Plaintiff alleges that after refusing to provide a urine sample to be used for a drug test, he telephoned Richard and told him that he did not want to take the drug test because he was concerned that he would test positive due to his prescription drug use. (Pl.'s Resp. to Defs.' Stmt. of Undisp. Facts ¶ 29 (citing Pl.'s Dep. at 102–04; Pl.'s Decl. ¶ 14.)) Plaintiff further avers that Richard told him that "if he refused to take the drug test he would be fired and if he took the drug test and tested positive he would be fired." (Pl.'s Resp. to Defs.' Stmt. of Undisp. Facts ¶ 30 (citing Pl.'s Dep. at 103.))

Defendants, on the other hand contend that during this telephone conversation, Richard informed Plaintiff that he need only disclose his medications to the doctor at the lab, and that the appropriate adjustments would be made on the test. (Defs.' Stmt. of Undisp. Facts ¶ 30 (citations omitted).) Defendants further aver that Richard encouraged Plaintiff to take the test and see what happened. (*Id.* ¶ 31 (citations omitted).) This dispute of fact, standing alone, is sufficient to preclude a finding that APS's policy—as applied in this case—violates the ADA as a matter of law. Although the policy as written clearly prohibits the use of all controlled substances (legally prescribed or otherwise), the parties' dispute as to the content of the October 24, 1996 telephone conversation record represents evidence from which a reasonable fact-finder could conclude that the policy was not enforced as written.

Furthermore, upon reconsideration of the court's Memorandum Opinion, the court recognizes that although it alluded to disputed issues of fact on this aspect of Plaintiff's cross-motion for summary judgment, the court applied the summary judgment standard incorrectly. At page 15 of the Memorandum Opinion, the court stated:

> [Plaintiff] was given no unequivocal indication that the test was solely for the purpose of detecting illegal drugs and that it was not conducted pursuant to APS's drug and alcohol abuse policy. In short, there are disputed issues of material fact concerning whether the urinalysis that Rowles was scheduled to undergo was solely for the purpose of detecting illegal drugs, or whether it was pursuant to the drug and alcohol abuse policy.

(Mem.Op. at 15.) Having identified disputed issues of material fact on this issue, the court should not have granted partial summary judgment in favor of Plaintiff. Moreover, the court recognizes that Plaintiff is not entitled to summary judgment merely because he "was given no unequivocal indication that the test was solely for the purpose of detecting illegal drugs and that it was not conducted pursuant to APS's drug and alcohol abuse policy" (i.e., he was not given an unequivocal indication that the test was to be implemented inconsistently with APS's written policy). To the contrary, Plaintiff is entitled to summary judgment only if the record indicates that he was given an unequivocal indication that the test would be implemented in strict accordance with APS's written policy.

In accordance with the foregoing analysis, the court will grant Defendants' motion for reconsideration as to the award of partial summary judgment in favor of Plaintiff. Accordingly, the court vacate the portion of its March 26, 1999 order granting partial summary judgment in favor of Plaintiff.

## 2. Denial of Summary Judgment in Favor of Defendants on Count III

The court now turns to Defendants' contention that the court erred in not granting summary judgment in favor of Defendants on Plaintiff's claim for wrongful discharge. However, because the court finds that Defendants' arguments lack merit, a protracted analysis of the this aspect of Defendants' motion is not warranted. Defendants make the following arguments in support of their position: (1) the Pennsylvania Workmen's Compensation Act ("WCA") bars Plaintiff's claim; (2) Plaintiff cannot show that his refusal to take a post-offer, pre-employment drug test violates a clear mandate of public policy; and (3) there is no breach of privacy claim cognizable in Plaintiff's termination.

With regard to Defendants' first argument, the court notes that such a position is an inappropriate basis for reconsideration of the court's prior decision. Defendants did not raise this argument in their motion for summary judgment, and there is no indication that new evidence or any intervening change in the law precipitated this argument. *See Cohen*, 869 F.Supp. at 321. Accordingly, the court will not grant Defendants' motion on this basis.

Turning to Defendants' second and third bases for reconsideration of the court's denial of summary judgment on Count III, the court notes that Defendants' arguments are merely restatements of the arguments presented in their motion for summary judgment. Upon consideration of said arguments, the court is unpersuaded. The court believes that Defendants' arguments were adequately addressed and rejected in the Memorandum Opinion. (Mem.Op. at 23–31.) Accordingly, the court will deny Defendants' motion for reconsideration insofar as they seek an order granting summary judgment in their favor on Count III.[8]

## C. Plaintiff's Motion for Reconsideration

In his motion for reconsideration, Plaintiff requests the court to reconsider its partial denial of Plaintiff's cross-motion for summary judgment. Specifically, Plaintiff argues that it is undisputed that Plaintiff was terminated pursuant to APS's policy and, therefore, in light of the court's determination that APS's policy violates the ADA, it naturally follows that Plaintiff's termination was in violation of the ADA.

The court first notes that Plaintiff's assertion that the undisputed evidence compels a determination that Plaintiff was terminated pursuant to the policy is specious. However, the court need not address this argument, because the court has, in Section III(B)(1) *supra*, determined that its order granting partial summary judgment in favor of Plaintiff was in error. Therefore, even assuming *arguendo* that Plaintiff was, in fact, undisputedly terminated pursuant to APS's policy, because the court, upon reconsideration, has concluded that APS's policy—as applied in this case—did not violate the ADA as a matter of law, Plaintiff's termination cannot be said to be in violation of the ADA as a matter of law. Accordingly, the court will deny Plaintiff's motion for reconsideration as moot.

## IV. Conclusion

In accordance with the foregoing memorandum of law, the court will: (1) deny Defendants' second motion for reconsideration (i.e., the court will not enter summary judgment in favor of Defendants on the issue of disability); (2) strike Plaintiff's cross-motion for summary judgment on the issue of disability; (3) grant in part and deny in part Defendants' initial motion for reconsideration; and (4) deny Plain-

---

**8.** The court points out that, in his response to Defendants' motion with respect to Count III, Plaintiff makes the arguments upon which the court's decision to deny the instant motion is based. Nevertheless, Defendants do not respond to these arguments in their reply brief, and thus appear to have conceded Plaintiff's position.

tiffs' motion for reconsideration. An appropriate order will issue. ·